NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231274-U

NO. 4-23-1274

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 7, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| D'ANDRE T. TOWNES, | ) | No. 22CF836 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Robin L. Schmidt, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justice Knecht concurred in the judgment.
Justice DeArmond specially concurred.

**ORDER**

¶ 1     *Held*: Defendant failed to establish the circuit court abused its discretion by denying defendant pretrial release.

¶ 2     Defendant, D'Andre T. Townes, appeals the circuit court's order denying him pretrial release pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code), hereinafter as amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023) (725 ILCS 5/110-6.1 (West 2022)), commonly known as the Pretrial Fairness Act (Act). Defendant checked the following boxes on his Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023) notice of appeal form, alleging the State failed to meet its burden of proving by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant committed a qualifying offense, (2) defendant posed a real and present threat to the safety of any person or

persons or the community based on the specific and articulable facts of this case, and (3) no condition or combination of conditions could mitigate the threat defendant posed. Defendant further argues the court erred by relying upon a single factor, namely the discharge of a weapon, in denying him pretrial release. The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal. However, pursuant to Rule 604(h), OSAD chose not to file a memorandum. We affirm the circuit court's denial of defendant's pretrial release.

¶ 3                                    I. BACKGROUND

¶ 4            On August 18, 2022, defendant was arrested. At defendant's first appearance, the circuit court imposed a $1 million bond. The State eventually charged defendant by indictment with 10 criminal counts: aggravated discharge of a firearm (count I) (720 ILCS 5/24-1.2(a)(3) (West 2022)); being an armed habitual criminal (count II) (720 ILCS 5/24-1.7(a) (West 2022)); armed violence (count III) (720 ILCS 5/33A-2(a) (West 2022)); attempted disarming of a peace officer (firing officer's holstered service weapon) (count IV) (720 ILCS 5/31-1a(b) (West 2022)); attempted disarming of a peace officer (grabbing the officer's taser) (count V) (720 ILCS 5/31-1a(b) (West 2022)); manufacture/delivery of methamphetamine (count VI) (720 ILCS 646/55(a)(1) (West 2022)); manufacture/delivery of a controlled substance (cocaine) (count VII) (720 ILCS 570/401(c)(2) (West 2022)); manufacture/delivery of a controlled substance (heroin) (count VIII) (720 ILCS 570/401(c)(2) (West 2022); possession of methamphetamine (count IX) (720 ILCS 646/60(a) (West 2022); and resisting a peace officer (count X) (720 ILCS 5/31-1(a-7) (West 2022)). Defendant never posted bond and remained in pretrial detention.

¶ 5            On September 21, 2023, defendant filed a motion for reconsideration of his pretrial release conditions citing section 110-7.5(b) of the Code (725 ILCS 5/110-7.5(b) (West 2022)). Defendant argued he was a nonviolent offender with ties to the community, his bail was set only

to ensure his appearance in court, and less restrictive conditions could be imposed to ensure he appeared for court.

¶ 6        In response, on October 6, 2023, the State filed a verified petition pursuant to section 110-6.1 of the Code (*id.* § 110-6.1) to deny defendant pretrial release. The State alleged defendant was charged with qualifying offenses and defendant's pretrial release posed a real and present threat to the safety of any person, persons, or the community. Specifically, the State alleged the circuit court should deny the defendant pretrial release for the following reasons:

> "(a) The defendant is charged with a felony offense other than a forcible felony for which, based on the charge or the defendant's criminal history, a sentence of imprisonment, without probation, periodic imprisonment or conditional discharge, is required by law upon conviction, and the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community. See 725 ILCS 5/110-6.1(a)(1).
>
> (b) The defendant is charged with a forcible felony, or any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement and the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community. See 725 ILCS 5/110-6.1(a)(1.5)."

Finally, the State alleged defendant is charged with aggravated discharge of a firearm and being an armed habitual criminal and his pretrial release poses a real and present threat to the safety of any person or persons or the community. See 725 ILCS 5/110-6.1(a)(6) (West 2022).

¶ 7     The State's petition provided the following factual basis in support of detaining defendant before his trial.

"On August 18, 2022, the Springfield Police Department conducted a traffic stop of a Chevrolet Impala. The Defendant was identified as the driver and asked to step out of the vehicle. A K9 sniff alerted to the possibility of narcotics inside of the vehicle. During a search of the vehicle, an officer located a hidden compartment containing a bag of 2.9 grams heroin/cocaine and 36.8 grams methamphetamine. After discovering the bag, an officer attempted to place the Defendant in handcuffs. The Defendant took off running[ ] but was tackled. During the scuffle, the Defendant was able to grab the firearm of an officer and discharge it in the direction of another[ ] approaching officer. The Defendant also attempted to grab another officer's taser before he was fully restrained and placed under arrest. One officer suffered an injury to his shoulder while trying to restrain the Defendant.

After the Defendant's arrest, officers located a silver Smith & Wesson 9mm pistol in the hidden compartment where the narcotics were found.

The traffic stop of the Chevrolet Impala was part of a greater narcotics investigation. On July 27, 2022, a confidential source met with the Defendant and purchased heroin from him. At the time of the controlled buy, the Defendant was driving the same Chevrolet

Impala. On August 18, 2022, a second controlled buy was planned with a confidential source, but the buy was abandoned. The traffic stop was conducted with the belief that the narcotics from the planned buy would be in the Defendant's possession."

The petition also outlined defendant's 16-year criminal history. In 2007, defendant was convicted for possession of a controlled substance and sentenced to probation, which was terminated. In 2008, defendant was convicted of unlawful possession of a weapon by a felon and was sentenced to 3 years in prison. Further, in 2008 and 2016, defendant was convicted for manufacture/delivery of a controlled substance and sentenced to prison terms of 5 and 14 years, respectively.

¶ 8        At the detention hearing on November 1, 2023, the circuit court noted other matters were pending before the court in addition to those related to defendant's pretrial detention. Defendant, who was proceeding *pro se* at the hearing, had filed a *pro se* motion to suppress evidence from the traffic stop. The State had filed a notice to use other crimes evidence. Both parties agreed they needed more time to address those matters and agreed to proceed only on the issue of defendant's pretrial detention.

¶ 9        Defendant argued he should be given pretrial release because he had strong ties to the community and his many family members would help him find a job. In addition, defendant noted he had never missed a court date and successfully completed different work release programs. Defendant also maintained he had a nonviolent history. According to defendant, "[t]he only charge that insinuates violence that I'm charged with right now is aggravated discharge of a firearm." As to that charge, defendant claimed the State could not prove every element of that crime, particularly the *mens rea* element. Defendant also asserted his motion to suppress would result in other charges being dismissed. Further, defendant argued the police officers' decisions

not to use deadly force during his arrest established he was not a dangerous threat at the time. Finally, defendant told the court he would submit to any home confinement or conditions.

¶ 10 Defendant's paramour, Marlesha Hatchett, and her mother, Teretha Hatchett, both testified to defendant's good character and his contributions to their family. Marlesha stated she would allow defendant to live with her. Further, she claimed defendant had a job "kind of waiting on him." Teretha testified defendant had a good relationship with her grandson. She further noted defendant wanted to help his community. Teretha confirmed she supported defendant and would help him.

¶ 11 Referencing its petition to detain defendant, the State argued several bases existed for detaining defendant. According to the State, count III (armed violence) and counts VI through IX (drug offenses) were not forcible felonies. However, they were detainable offenses because defendant's criminal history made him ineligible for a community-based sentence. Similarly, the State noted defendant could be detained based on his aggravated discharge of a firearm charge and being an armed habitual criminal charge because he was a real and present threat to the community.

¶ 12 The State then recounted the factual basis from the petition and defendant's "concerning criminal history." The State agreed defendant did not have past "victims," but his past crimes were dangerous. Further, the State highlighted defendant's pattern of returning to dangerous, criminal conduct over the years. According to the State, defendant's conduct of selling drugs and carrying a weapon could be very dangerous for both himself and others. The State also argued the facts of this case should give the circuit court serious pause because of what defendant was willing to do when he felt caught or desperate to escape the authorities. The State urged "no combination of factors or circumstances *** could be utilized other than simply detaining the defendant prior to trial that could ultimately keep the public safe."

¶ 13        In response, defendant argued no victim existed to fear him. He also stated he did not intentionally injure the officer who tackled him and had no intention of hurting any of the other officers. According to defendant, he could not see the area around him when he discharged the firearm. He further argued the gunshot did not cause any damage. Finally, defendant stated that while the discharge of the firearm insinuated violence, the act was not done in an intentional and violent manner.

¶ 14        In determining whether defendant should be released from pretrial detention, the circuit court noted the State had presented compelling evidence. According to the court, some of defendant's arguments would be more appropriately argued before a jury or possibly at a hearing on defendant's motion to suppress. However, as to whether defendant should be given pretrial release, the court noted defendant was a convicted felon and had a gun and drugs in his vehicle. The court also stated the State had charged defendant with dangerous conduct, including non-probationable offenses. While acknowledging defendant claimed he suffered a mental health crisis during the traffic stop, the court stated defendant was engaged in "dangerous business." The court explained that fighting with a police officer for his weapon was extremely serious. In addition, the court noted it was very disturbed that the police officer's gun was actually discharged when defendant was fighting with the officer for his weapon. According to the court, it was necessary to detain him pending trial to keep the community safe.

¶ 15        In the circuit court's written order, it found by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant committed a detainable offense pursuant to subsection 6.1(a) of the Code (725 ILCS 5/110-6.1(a)(1)–(7) (West 2022)), (2) defendant's pretrial release posed a real and present threat to the safety of the community, based on the specific articulable facts of the case, and (3) no conditions or combination of

conditions could mitigate the real and present threat defendant posed to the community based on the specific articulable facts of this case. The court's written order provided the following reasons for its conclusion defendant should be denied pretrial release: (1) the nature and circumstances of the charged offenses; (2) defendant's prior criminal history; (3) defendant's psychological, psychiatric or other social history indicated he had a violent, abusive, or assaultive nature; (4) defendant posed a threat to Springfield police officers; (5) the victim's injuries; (6) defendant was known to possess or have access to weapons; and (7) defendant had been released from the Illinois Department of Corrections in 2021.

¶ 16            Defendant filed a timely notice of appeal under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023).

¶ 17                                    II. ANALYSIS

¶ 18            Initially, we note that this disposition was due January 30, 2024. Although we made every effort to comply with the time requirements of Rule 604(h), further deliberations on this matter required additional time and thus we find good cause for filing beyond the deadline.

¶ 19            As noted earlier, OSAD did not file a memorandum in this case. Thus, we are left to examine the arguments raised in defendant's notice of appeal.

¶ 20            This court reviews a circuit court's decision to grant or deny a verified petition for pretrial detention for an abuse of discretion. See *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable, or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *Id.* ¶ 10. Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *Id.* ¶ 11. " '[W]e will not substitute our own judgment for the trier of

fact on issues regarding the weight of the evidence or the credibility of the witnesses.' " *Id.* (quoting *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44).

¶ 21     Before denying pretrial release, the circuit court must have before it clear and convincing evidence that the proof is evident or the presumption great that the defendant committed a detention eligible offense, the defendant is a real and present threat to the safety of a person, persons, or the community, and no condition or combination of conditions found in section 110-10(b) (725 ILCS 5/110-10(b) (West 2022)) could mitigate that threat. See *Id.* § 110-6.1(e)(1), (2), (3)(i) (West 2022). Section 110-6.1(e) of the Code (*id.* § 110-6.1(e)) instructs the court to consider "the specific articulable facts of the case" when determining whether a defendant poses a real and present threat and whether any condition or combination of conditions could mitigate that threat. Section 110-6.1(g) of the Code (*id.* ¶ 110-6.1(g)) provides nine factors to be considered by the court when making a determination of dangerousness.

¶ 22     A. Evidence Regarding Defendant's Commission of the Charged Offenses

¶ 23     Defendant checked the box on his form notice of appeal indicating the State failed to meet its burden of proving by clear and convincing evidence that the proof was evident or the presumption great that defendant committed the charged offenses in this case. In explaining his contention of error, defendant first points to his "currently pending" motion to suppress evidence. According to defendant, the traffic stop that led to the charges in this case "was pretextual and unjustified at its inception," and the police unlawfully prolonged the stop while waiting for a canine unit. Defendant also argues the State did not present clear and convincing evidence that the proof is evident or the presumption great that he committed the offense of aggravated discharge of a firearm because he did not load the firearm or know the firearm's safety switch was not engaged.

¶ 24     We first note section 110-6.1(f)(6) of the Code (725 ILCS 5/110-6.1(f)(6) (West 2022)) does not allow defendants to move to suppress evidence during detention hearings. While a defendant can argue the State's evidence should not be given much weight because it "may have been the result of an unlawful search or seizure, or both, or [obtained] through improper interrogation" (*id.*), defendant did not make this argument at the detention hearing. As a result, for purposes of this appeal, this argument is forfeited. See *People v. Martin*, 2023 IL App (4th) 230826, ¶¶ 16-17 ("The purpose of requiring defendants to raise these matters with the trial court is to allow for proper development of legal precedent regarding a brand-new statute.").

¶ 25     As for defendant's argument that the State did not present clear and convincing evidence that the proof was evident or the presumption great that defendant committed the aggravated discharge of a firearm, he failed to make this same argument with regard to all of the other detention eligible offenses he was charged with committing. We note the State argued and the circuit court agreed that defendant was detainable under section 110-6.1(a)(1) of the Code for the following charged offenses, in addition to the aggravated discharge of a firearm charge, because defendant's criminal history made him ineligible for a community-based sentence: (1) being an armed habitual criminal (count II); (2) armed violence (count III); (3) attempted disarming of a police officer (counts IV and V); and (4) the drug offenses (counts VI through IX). See 725 ILCS 5/110-6.1(a)(1) (West 2022).

¶ 26     As a result, even assuming, *arguendo*, defendant could establish the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense of aggravated discharge of a firearm— which defendant could not do based on the evidence before the circuit court—defendant failed to argue the State did not meet its burden with regard to the other charges listed above.

¶ 27        We note this court "is not a depository in which the appellant may dump the burden of argument and research." (Internal quotation marks omitted.) *Inman*, 2023 IL App (4th) 230864, ¶ 13. As a result, we need not address this issue further.

¶ 28                        B. Dangerousness

¶ 29        Defendant next argues the State failed to prove by clear and convincing evidence that he posed a real and present threat to the safety of any person, persons, or the community based on the specific, articulable facts of this case. According to defendant, the circuit court found him dangerous "based solely on the discharge of the firearm." Defendant also asserts he does not pose a real and present threat to the community because the gunshot did not injure anyone, cause property damage, and he did not intend to harm anyone.

¶ 30        Contrary to defendant's claim, the circuit court did not base its dangerousness determination solely upon the discharge of the firearm. The court thoroughly explained its reasons for finding defendant posed a real and present threat to the community. In addition to discharging the firearm, the court noted defendant was a convicted felon, was engaged in "dangerous business," had a gun and drugs in his vehicle, and was fighting a police officer for the officer's weapon. As a result, defendant's argument is not supported by the record.

¶ 31                    C. Less Restrictive Conditions

¶ 32        Defendant next checked a box on his notice of appeal form alleging the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate defendant's real and present threat to the safety of a person, persons, or the community. We note most of defendant's argument is based on his assertion he is not dangerous, which we have already found meritless. As we discussed above, the circuit court outlined several reasons why defendant posed a danger to the community.

¶ 33    As for the circuit court's finding that no condition or combination of conditions could mitigate defendant's real and present threat to the community, defendant only states that he would "comply with any conditions imposed." This is not an argument that the circuit court abused its discretion by determining no condition or combination of conditions could mitigate the threat defendant posed. As stated earlier, "[t]he appellate court is not a depository in which the appellant may dump the burden of argument and research." (Internal quotation marks omitted.) *Inman*, 2023 IL App (4th) 230864, ¶ 13. As a result, defendant has failed to carry his burden of establishing the circuit court abused its discretion on this issue.

¶ 34                    D. Sole Basis for Detention

¶ 35    Finally, defendant argues the circuit court's decision does not comply with section 110-6.1(f)(7) of the Code (725 ILCS 5/110-6.1(f)(7) (West 2022)), which provides that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention. Risk assessment tools may not be used as the sole basis to deny pretrial release." Defendant claims he was denied pretrial release solely because the firearm in this case discharged.

¶ 36    This argument is refuted by the record and meritless. The circuit court cited many reasons for denying defendant pretrial release and did not rely on any one factor or standard. As a result, once again, defendant has failed to meet his burden of showing the circuit court abused its discretion by denying him pretrial release.

¶ 37                    III. CONCLUSION

¶ 38    For all these reasons, we affirm the judgment of the circuit court.

¶ 39    Affirmed.

¶ 40    JUSTICE DeARMOND, specially concurring:

- 12 -

¶ 41        I agree with the outcome of this case. However, while the majority finds the defendant forfeited his narrow argument regarding why the State failed to prove by clear and convincing evidence the proof was evident or presumption great that he committed aggravated discharge of a firearm (*supra* ¶¶ 23-24), "forfeiture of an issue is a limitation on the parties and not on this court." *People v. Raney*, 2014 IL App (4th) 130551, ¶ 33, 8 N.E.3d 633. Defendant's claim is based on what I believe to be a mistaken reading of subsection 6.1(e) of the Code, which is regularly overlooked in many of these Rule 604(h) appeals, and we should have addressed it here.

¶ 42        Subsection 6.1(e)(1) appears to be frequently read to mean the State must prove "by clear and convincing evidence" the "proof is evident or presumption great" defendant committed *the charged offense*, and some courts have described it in those terms. 725 ILCS 5/110-6.1(e)(1) (West 2022). Although not the language of the statute, it is, unfortunately, the language found in the form notices of appeal with which we are all now familiar. See Article VI Forms Appendix to the Illinois Supreme Court Rules; Ill. S. Ct. R. 606(d) (eff. Oct. 19, 2023) ("The State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged.").

¶ 43        However, subsection 6.1(e)(1) states, in relevant part, "the State shall bear the burden of proving by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed *an offense listed in subsection (a)*." (Emphasis added.) 725 ILCS 110-6.1(e)(1) (West 2022).

¶ 44        I suggest the level of proof necessary to establish the commission of an offense as a possible basis for detention, or, as we knew it previously, for the setting of bond, is probable cause—subsection 6.1(b) and an endless body of caselaw say so. See 725 ILCS 5/110-6.1(b) (West

2022). Subsection 6.1(e) needs to be read chronologically, in the order such proceedings would transpire. See 725 ILCS 5/110-6.1(e) (West 2022). If the State cannot establish probable cause for the commission of the offense charged, then the hearing is over because there is no basis for detention. 725 ILCS 5/110-6.1(b) (West 2022) ("If there is a finding of no probable cause, the defendant shall be released."). The statute contemplates the possibility of a probable cause determination occurring earlier, as it was in this case. See 725 ILCS 5/110-6.1(b) (West 2022) (instructing the court to determine probable cause "unless a hearing pursuant to Section 109-3 of this Code has already been held or a grand jury has returned a true bill of indictment against the defendant"). If probable cause is not found earlier, it becomes a part of the State's proffer during the detention hearing. But probable cause is still required, or subsection 6.1(b) would not say the court must make such a finding. If a probable cause finding is not sufficient to reach a consideration of defendant's "detainability," subsection 6.1(b) becomes superfluous. We do not interpret statutes in ways that ignore their plain language or render sections meaningless or superfluous. *People v. Rowell*, 2020 IL App (4th) 190231, ¶ 16, 165 N.E.3d 477.

¶ 45          Defendant is mistaken about the State's burden under the facts of this case. The September 2022 indictment eliminated the need for the circuit court to find probable cause in this instance. The statute contemplates the court making a probable cause determination, either at the time of the detention hearing or before. See 725 ILCS 5/110-6.1(b) (West 2022). Having done so, the State's burden was then to establish "by clear and convincing evidence" that the proof was evident or the presumption great "the defendant has committed *an offense listed in subsection (a)*"—in other words, a detainable offense. (Emphasis added.) 725 ILCS 5/110-6.1(e)(1) (West 2022).

¶ 46    Some offenses are listed by name, while others are described by certain characteristics or factors which must be found before they are considered detainable. See 725 ILCS 5/110-6.1(a)(1)-(7) (West 2022). When the charged offense is in the latter category, the State is required to show not only the commission of an offense, but the additional factors rendering the offense detainable. Here, because defendant was charged with offenses identified by both name and circumstances, the State needed to identify them as detainable under subsections (a)(1) through (a)(7) or present additional information establishing the circumstances under which the offenses may serve as a basis for detention. The State does not have to prove the *commission* of the offense *again*.

¶ 47    Defendant's interpretation of the statute, and the interpretation I have seen in other cases, means the State is required to meet two different and increasingly stringent burdens of proof to establish the *commission* of the offense in the same proceeding. That hardly comports with any other aspect of criminal procedure and jurisprudence, other than the trial itself. There, the State must meet the *prima facie* threshold to survive a directed verdict/finding at the close of the case-in-chief and then establish the defendant's guilt beyond a reasonable doubt. This forms a bedrock of constitutional rights in a criminal trial. But this is not a trial. It is a detention hearing.

¶ 48    I find a more reasonable interpretation of the statute to be that the State must establish the commission of *an* offense by probable cause, but it must establish the circumstances making the offense "detainable" by clear and convincing evidence, just as it must for each of the other factors listed in subsections (e)(1) through (e)(4). If the offense is listed by name in subsection (a)(1) through (a)(7), then the proof is simple. The State must show probable cause the offense was committed, and the statute identifies it as a detainable offense. If the offense requires some additional factor or condition (*e.g.*, any other forcible felony with great bodily harm,

permanent disability, or disfigurement), then the State might need to show more. In that case, it must show "the proof is evident or the presumption great" the offense is one for which defendant can be detained. 725 ILCS 5/6.1(e)(1) (West 2022).

¶ 49    The use of "committed" in subsection (e)(1) (*i.e.*, "the proof is evident or the presumption great that the defendant has *committed* an offense listed in subsection (a)" (emphasis added) (725 ILCS 5/6.1(e)(1) (West 2022)) does not mean the commission of the offense must be proven again. It simply means the probable cause component required in subsection (b) must be established before the circuit court reaches the issue of the offense's detainability. In most instances, the evidence of both will be presented at the same time through the State's proffer. In cases involving an earlier probable cause finding, the State may need to present more evidence of the offense's detainability, and it is that evidence for which the *proof must be evident or the presumption great*.

¶ 50    But what does that mean? This language is not new. Article I, section 9 of the Illinois Constitution provides: "All persons shall be bailable by sufficient sureties, except for the following offenses *where the proof is evident or the presumption great* ***." (Emphasis added.) Ill. Const. 1970, art. I, § 9. When discussing the constitutional right to bail, which usually arose prior to a preliminary hearing, and the right courts have to qualify it, our supreme court, in *People ex rel. Hemingway v. Elrod*, 60 Ill. 2d 74, 322 N.E.2d 837 (1975), compared the language of article I, section 9 of the Illinois Constitution of 1970 with the language of section 110-4 of the Code of Criminal Procedure at the time (Ill. Rev. Stat. 1971, ch. 38, ¶ 110-4) , noting the "proof is evident or the presumption great" language was the same as that contained in section 7 of article II of the 1870 Illinois Constitution. *Hemingway*, 60 Ill. 2d at 76. The *Hemingway* court found the circuit court's authority to manage the conduct of proceedings to deny or revoke bail when appropriate

"must not be based on mere suspicion but must be supported by sufficient evidence to show that it is required." *Hemingway*, 60 Ill. 2d at 79-80. That sounds like probable cause to me.

¶ 51         In *People v. Miller*, 2023 IL App (3d) 230488-U, when addressing the defendant's Rule 604(h) appeal challenging the sufficiency of the evidence to detain, the court found, "First, the defendant was indicted on all the felony offenses initially charged here, thus showing that the *proof was evident* that defendant committed the crimes charged." (Emphasis added.) *Miller*, 2023 IL App (3d) 230488-U, ¶ 12. Once again, this seems to be probable cause—a grand jury's true bill.

¶ 52         "Clear and convincing" has been in the bond provisions of the Criminal Code for a long time as well. For example, an earlier version of section 110-6.1 of the Criminal Code provided, "The facts relied on by the court to support a finding that the defendant poses a real and present threat to the physical safety of any person or persons shall be supported by *clear and convincing evidence* presented by the State." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, ¶ 110-6.1(c)(2). Just as we find in the current iteration of section 110-6.1, this language also came *after* the preceding subsection (b) which permitted the court to deny bail only where, after a hearing, it was determined that: "(1) the proof is evident or the presumption great that the defendant has committed [a non-probationable] offense." Ill. Rev. Stat. 1989, ch. 38, ¶ 110-6.1((c)(2).

¶ 53         This only makes sense, logically, as the State previously has had to establish probable cause first, before getting to the issue of denying bail. The evidence relevant to the commission of the offense might not have been enough, by itself, to establish a basis to deny bail. For that reason, the State must present more evidence indicating, not that the offense was committed, but that additional facts warranted the denial of bail entirely.

¶ 54         *People v. Rodriguez*, 2023 IL App (3d) 230450, is a present-day example of the kind of analysis necessary when the offense alone may not be detainable. Resisting or obstructing

a peace officer was not listed in subsection 6.1(a)(1) through (a)(7). However, subsection 6.1(a)(1.5) provides pretrial release may be denied if the defendant poses a real and present threat and is charged with a forcible felony. The definition of forcible felony includes "any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement." 725 ILCS 5/110-6.1(a)(1.5) (West 2022). The State presented evidence that, when defendant drove away during the traffic stop, the officer's body was partially inside the vehicle—establishing the threat of great bodily harm. *Rodriguez*, 2023 IL App (3d) 230450, ¶ 10. The court held the State showed the underlying facts which brought the offense within the broader definition of "any other felony" and did so by clear and convincing evidence. *Rodriguez*, 2023 IL App (3d) 230450, ¶ 10.

¶ 55        *People v. Romero*, 2024 IL App (1st) 232023-U, ¶ 35, another Rule 604(h) appeal, discussed the State's burden under section 110-6.1(e) to establish each of the factors listed therein. Quoting our supreme court, the *Romero* court declared " '[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question.' " *Romero*, 2024 IL App (1st) 232023, ¶ 35 (quoting *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74, 216 N.E.3d 124). Further, in *Chaudhary* our supreme court asserted that "proof by a preponderance of the evidence means that the trier of fact must believe that it is more likely than not that the evidence establishes the proposition in question." *Chaudhary*, 2023 IL 127712, ¶ 74. *Romero* also cited *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12, which said, "Clear and convincing evidence is that quantum of proof that leaves no doubt in the mind of the fact finder about the truth of the proposition in question." *Romero*, 2024 IL App (1st) 232023-U, ¶ 35.

¶ 56 Surely, at a detention hearing, during what is often a defendant's first appearance, the State is not required to establish the commission of the offense, first by probable cause, and then again, in the same preliminary proceeding, at the higher level of clear and convincing evidence. Instead, a more reasonable reading leads us to conclude the State must establish the offense's detainability at this higher level, as was previously required to hold a defendant without bond under earlier versions of section 110-6.1 of the Code. In some instances, it will only require identifying the offense from the list provided in the statute. In others, it will require an additional proffer of the factors causing it to fall within the category of detainable offenses.

¶ 57 Because I believe we should have addressed this issue, I specially concur.